## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JOHNNY CARTER,

     Petitioner,

v.                               Case No. 8:21-cv-1570-WFJ-CPT

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____/

## ORDER

     Johnny Carter, a Florida prisoner, timely filed a third amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 18). Respondent filed a response opposing the petition. (Doc. 27). Mr. Carter did not file a reply. Upon consideration, the petition is **DENIED**.

## I.    Background

     In January 2014, Daniel McCullough lived in Tampa, Florida, with his wife Danielle Satterly, his two brothers, and his father. (Doc. 28-2, Ex. 3, at 23-24). At the time, Mr. McCullough had known Mr. Carter for approximately five months. (*Id.* at 25). The two were friends, and on several occasions Mr. Carter had come over to Mr. McCullough's house to play video games. (*Id.* at 26). Mr. McCullough owned five guns that he kept in his bedroom: a Smith & Wesson .40 caliber handgun, a Mossberg 12-gauge shotgun, a Ruger .22 caliber semi-automatic rifle, a Winchester .243 caliber sniper rifle, and a .22

caliber Marlin rifle. (*Id.* at 27, 37-43). Mr. McCullough had shown each gun to Mr. Carter before the incident that led to the latter's arrest. (*Id.* at 27).

Around 10:00 a.m. on January 29, 2014, Mr. Carter knocked on Mr. McCullough's front door. (*Id.* at 114). One of Mr. McCullough's brothers answered. (*Id.*) Mr. Carter said he was looking for Mr. McCullough. (*Id.*) The brother let him in and explained that Mr. McCullough was "still sleeping." (*Id.* at 114-15). Mr. Carter wrote an illegible note, left it on the kitchen counter, and "said that he was going to talk to" Mr. McCullough. (*Id.* at 115-17, 169).

Mr. Carter made his way to Mr. McCullough's bedroom. (*Id.* at 28-29). He opened the door and came upon Mr. McCullough and Ms. Satterly lying in bed together. (*Id.* at 28, 30). Mr. Carter asked Mr. McCullough to take him to a store to "get [] some nine-millimeter bullets." (*Id.* at 30). Mr. McCullough declined, explaining that he "had a toothache" and was "not feeling good." (*Id.*) Mr. Carter pulled out a .45 caliber handgun, pointed it at the couple, and said, "I really hate to do this to you, but . . . . [a]in't nobody been giving me sh*t, so it's time I take sh*t in my own hands and get what is mine." (*Id.* at 31-32). Mr. McCullough initially thought Mr. Carter was joking. (*Id.* at 35). But when Mr. Carter pointed the gun directly at Ms. Satterly, Mr. McCullough realized he was serious. (*Id.* at 36).

Seeking to "get [Mr. Carter] out of [the] house," Mr. McCullough said he knew of "another house" to rob. (*Id.*) That tactic failed, and Mr. Carter asked Mr. McCullough, "Where's the .40 at?" (*Id.* at 37). Mr. Carter grabbed Mr. McCullough's .40 caliber handgun from "between [the] bed and the wall" and put it in his waistband. (*Id.* at 37-38).

2

As he continued to point the gun at the couple, Mr. Carter took three other firearms that belonged to Mr. McCullough: the Mossberg shotgun, the Ruger rifle, and the Winchester sniper rifle. (*Id.* at 35-42). Mr. Carter then asked for the Marlin rifle. (*Id.* at 43). Mr. McCullough "put [his] arm out in front of" the rifle, prompting Mr. Carter to place his handgun on Mr. McCullough's forehead and "pull[] the trigger." (*Id.* at 45). The gun "misfired," and Mr. McCullough heard a "[c]lick." (*Id.* at 46). Mr. Carter "ejected the live round that didn't fire" and put "a fresh round in." (*Id.* at 46-47). He then pointed the gun at Mr. McCullough's kneecap and said, "Do you want it in your kneecap or your elbow?" (*Id.* at 47).

Next, Mr. Carter asked for "the car keys." (*Id.* at 48). Ms. Satterly owned a 2001 Chevy Cavalier. (*Id.*) Mr. Carter took the keys from dresser; he also grabbed Mr. McCullough and Ms. Satterly's cell phones. (*Id.*) Mr. Carter then said, "Count down from ten. If you move before ten seconds I will kill you. If you call the cops, I will personally come back and kill you myself or I will send somebody over here to kill you." (*Id.* at 49). As he left the room, Mr. Carter grabbed a "handheld PlayStation." (*Id.*) He exited the house and drove away in the Chevy Cavalier. (*Id.* at 50-51).

Mr. Carter was arrested and ultimately charged with two counts of robbery with a firearm and one count of grand theft of a motor vehicle. (*Id.*, Ex. 2, at 93-97). Following a jury trial, Mr. Carter was found guilty as charged. (*Id.* at 127-29). As part of its verdict, the jury found that Mr. Carter "actually possessed a firearm during the commission" of the two robbery offenses. (*Id.* at 127-28). The state trial court sentenced him to concurrent terms of twenty-five years' imprisonment for the robbery counts and five years' imprisonment

for the grand theft count. (*Id.* at 136). The sentences for robbery included ten-year mandatory minimums pursuant to Florida's 10-20-Life law.[1] (*Id.*) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 7). Mr. Carter unsuccessfully sought postconviction relief under Florida Rule of Criminal Procedure 3.850, (Doc. 28-3, Ex. 18, at 245-70, 632-35), and the state appellate court *per curiam* affirmed the denial of relief, (Doc. 28-3, Ex. 22). Mr. Carter also filed a petition alleging ineffective assistance of appellate counsel, which was summarily denied. (Doc. 28-2, Exs. 10, 11, 12). This federal habeas petition followed. (Docs. 1, 10, 13, 18).

## II.     Standards of Review

### A.     AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] "The 10-20-Life statute provides for a minimum mandatory sentence of ten years for possession of a firearm during the commission of [a] robbery and a minimum mandatory sentence of twenty years for the discharge of a firearm during the commission of [a] robbery." *Muldrow v. State*, 842 So. 2d 240, 241 (Fla. 2d DCA 2003).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Mr. Carter's convictions and sentences, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should

'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

### B.  Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable

6

probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C.    Ineffective Assistance of Counsel

Mr. Carter alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Carter must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Carter must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702

7

F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential."). "The question [on federal habeas review of an ineffective-assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## III.  Discussion

### A.  Ground One, Sub-Claim A—Failure to Challenge "Defective Charging Document"

Mr. Carter contends that trial counsel was ineffective for failing to raise several challenges to the superseding information in his case. (Doc. 18 at 6). According to Mr. Carter, counsel should have argued that the information was defective because it (1) failed to allege that he "discharge[d] a firearm" for purposes of the 10-20-Life enhancement; (2) did not "include [his] race, gender, [] date of birth," or the "time and place where the alleged offense was committed"; (3) contained an improper "filing date"; (4) included "altered statutes and elements of robbery, theft, and possession or use of weapon"; (5) contained an allegedly "fraudulent statement by ASA Joel Elsea that [he] obtained [a] sworn statement by [a] material witness"; and (6) failed to "state that the prosecution [was] being brought by the [State Attorney] through the designated ASA." (Doc. 18 at 6).

8

Respondent contends that this claim is procedurally defaulted. (Doc. 27 at 30). The Court need not reach that issue because, even under *de novo* review, Mr. Carter's ineffective-assistance claim fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event."). It is well established that "[a] lawyer cannot be deficient for failing to raise a meritless claim." *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008). Mr. Carter's challenges to the superseding information uniformly lack merit. Thus, counsel was not ineffective for failing to raise them.

First, Mr. Carter complains that the superseding information failed to allege that he "discharge[d] a firearm" for purposes of the 10-20-Life enhancement. (Doc. 18 at 6). As noted above, "[t]he 10-20-Life statute provides for a minimum mandatory sentence of ten years for possession of a firearm during the commission of [a] robbery and a minimum mandatory sentence of twenty years for the discharge of a firearm during the commission of [a] robbery." *Muldrow*, 842 So. 2d at 241. "To pursue an enhanced mandatory sentence as the 10-20-Life statute [prescribes], the state must allege the grounds for enhancement in the charging document." *Bienaime v. State*, 213 So. 3d 927, 929 (Fla. 4th DCA 2017).

Here, the prosecution did not seek to enhance Mr. Carter's sentence on the ground that he *discharged* a firearm. Instead, the superseding information alleged that Mr. Carter "*actually possessed* a firearm" "during the commission" of the robbery. (Doc. 28-2, Ex. 2, at 93-94 (emphasis added)). As part of its verdict, the jury found that Mr. Carter "actually possessed a firearm" when he robbed the victims. (*Id.*, Ex. 3, at 127-28). Based on that finding, Mr. Carter received a ten-year mandatory minimum sentence for each robbery

9

count. (*Id.*, Ex. 2, at 136). Thus, the information properly "allege[d] the grounds for [the] enhancement" that was imposed in this case—that is, the ten-year mandatory minimum for possessing a firearm during a robbery. *Bienaime*, 213 So. 3d at 929. Because the prosecution never sought to enhance Mr. Carter's sentence based on the discharge of a firearm, it is irrelevant that the information failed to allege that he fired the gun.

Second, Mr. Carter argues that the information failed to "include [his] race, gender, [] date of birth," or the "time and place where the alleged offense was committed." (Doc. 18 at 6). Mr. Carter is mistaken. The information set forth his race, gender, date of birth, and other demographic data. (Doc. 28-2, Ex. 2, at 96). And even if it had omitted that information, Florida Rule of Criminal Procedure 3.140(c)(4) provides that the "[f]ailure to include [such] facts shall not invalidate an otherwise sufficient indictment or information." As for the time and place of the offenses, the information alleged that each offense was committed on January 29, 2014, in Hillsborough County, Florida. (Doc. 28-2, Ex. 2, at 93-94). Nothing more was required to comply with Florida law. *See Bettey v. State*, 244 So. 3d 364, 367 (Fla. 4th DCA 2018) ("[T]he State may charge a date range, and need not specify exact dates if they are not known."); *State v. Barnett*, 344 So. 2d 863, 865 (Fla. 2d DCA 1977) ("[I]t is essential for an indictment to state the county within which the offense was committed.").

Third, Mr. Carter states that the information "already contain[ed] a filing date which shows the delay is preferable to error." (Doc. 18 at 6). Mr. Carter does not elaborate on this statement, and it is unclear what he means by it. Under Florida law, an information "shall bear the date (day, month, year) that it is filed in each court in which it is so filed." Fla. R.

Crim. P. 3.140(c)(3). The superseding information complied with this rule. It bore a stamp indicating that it was filed on June 30, 2016, and it contained an electronic filing stamp from the clerk of court noting that it was "E-Filed" on the same day. (Doc. 28-2, Ex. 2, at 93). Thus, there was no basis for counsel to object to the "filing date" of the information.

Fourth, Mr. Carter argues that the information included "altered statutes and elements of robbery, theft, and possession or use of weapon." (Doc. 18 at 6). Again, it is not clear what Mr. Carter means by this statement. The information did not "alter[]" any of the statutes it invoked. And while the robbery counts did include citations to the theft statute, (Doc. 28-2, Ex. 2, at 93), there was nothing improper about that. "Theft is a permissive lesser included offense of robbery with a firearm or deadly weapon." *Ingram v. State*, 928 So. 2d 1262, 1263 (Fla. 4th DCA 2006). The jury in Mr. Carter's case was instructed on the lesser included offense of theft. (Doc. 28-2, Ex. 2, at 107). That instruction could not have been given unless the "information [] allege[d] all the statutory elements of the permissive lesser included offense." *Anderson v. State*, 291 So. 3d 531, 534 (Fla. 2020). Thus, the prosecution properly cited the theft statute as part of the robbery counts. As for the references to possession of a firearm, the prosecution was required to allege those facts in order to seek the 10-20-Life enhancement. *See Davis v. State*, 884 So. 2d 1058, 1060 (Fla. 2d DCA 2004) ("[T]he minimum terms mandated by the '10-20-Life' statute . . . cannot be legally imposed unless the statutory elements are precisely charged in the information.").

Fifth, Mr. Carter claims that the information contained a "fraudulent statement by ASA Joel Elsea that [he] obtained [a] sworn statement by [a] material witness." (Doc. 18

11

at 6). Under Florida law, "[a]n information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath . . . certifying that he or she has received testimony under oath from the material witness or witnesses for the offense." Fla. R. Crim. P. 3.140(g). The information contained the required certification, (Doc. 28-2, Ex. 2, at 95), and Mr. Carter provides no evidence that it was "fraudulent." To the contrary, the record reflects that both victims provided sworn statements to law enforcement before Mr. Carter was charged. (Doc. 28-3, Ex. 18, at 55-56). Thus, there is no basis to conclude that the certification was defective. *See Russell v. Fla. Dep't of Corr.*, No. 3:13-cv-519-LAC-EMT, 2015 WL 2338622, at *43 (N.D. Fla. May 13, 2015) ("Florida courts have held that an assistant state attorney who signs an information need not personally administer an oath to, personally question, or see and hear the testimony of the material witness or witnesses upon which charges are based. The testimony of a material witness may be sworn to before anyone authorized to administer an oath, and then transmitted to the state. The assistant state attorney can then properly certify that he has received testimony under oath from the material witness.").

Sixth and finally, Mr. Carter maintains that the information was defective because it failed to "state that the prosecution is being brought by the [state attorney] through the designated ASA." (Doc. 18 at 6). As just noted, Florida law requires that "[a]n information charging the commission of a felony [] be signed by the state attorney, or a designated assistant state attorney." Fla. R. Crim. P. 3.140(g). In this case, the information was signed by Mr. Elsea, an assistant state attorney. (Doc. 28-2, Ex. 2, at 95). Mr. Carter cites no authority—and this Court cannot locate any—holding that an information must expressly

12

state that the assistant state attorney was "designated" by the state attorney to sign the charging document.

In short, Mr. Carter's objections to the superseding information are, without exception, frivolous. "Failing to make a meritless objection does not constitute deficient performance" under *Strickland*. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015). Accordingly, counsel was not ineffective for failing to raise Mr. Carter's proposed arguments.

Moreover, even if Mr. Carter could show deficient performance, his ineffective-assistance claim would still fail for lack of prejudice. To show prejudice under *Strickland*, Mr. Carter must "establish a reasonable probability that, but for counsel's [failure to object to the superseding information], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014). Florida law permits the amendment of an information "at any time prior to trial because of formal defects." Fla. R. Crim. P. 3.140(j). Thus, even if counsel had successfully objected to the information on the grounds urged by Mr. Carter, the prosecution could have amended the charging document to remedy the alleged defects. As a result, Mr. Carter cannot establish that he was prejudiced by counsel's conduct. *See Lawson v. Sec'y DOC*, No. 2:16-cv-85-JES-MRM, 2017 WL 4271664, at *6 (M.D. Fla. Sept. 26, 2017) ("[Petitioner] has not explained what would have prevented the state from simply filing an amended information had Counsel objected; accordingly, he has not demonstrated *Strickland* prejudice."), *aff'd sub nom. Lawson v. Sec'y, Dep't of Corr.*, 785 F. App'x 722 (11th Cir. 2019).

For all these reasons, Ground One, Sub-Claim A is denied.

13

**B.      Ground One, Sub-Claim B—Failure to Raise Alleged Speedy Trial Violation**

Mr. Carter argues that trial counsel was ineffective for failing to "move for discharge on speedy trial grounds." (Doc. 18 at 6). Mr. Carter elaborated on this claim in his Rule 3.850 motion. There, he alleged that his right to a "speedy trial set forth in Fla. R. Crim. P. 3.191(a)(1)" was violated because of counsel's "unprofessional" conduct, and that he "never waived his right to speedy trial." (Doc. 28-3, Ex. 18, at 206). This claim lacks merit.

Florida law provides that a defendant "shall be brought to trial within . . . 175 days of arrest if the crime charged is a felony." Fla. R. Crim. P. 3.191(a). "This right is not self-executing and requires a defendant to take affirmative action to avail himself of the remedies provided under the statute." *Dillard v. Sec'y, DOC*, 440 F. App'x 817, 819 (11th Cir. 2011). In particular, "after the 175-day speedy trial period expires, a defendant may file a 'Notice of Expiration of Speedy Trial Time,' which triggers a 10-day 'recapture period.'" *Id.* (citing Fla. R. Crim. P. 3.191(p)(2)). If no exceptions exist "which would prevent speedy trial," "the trial court must order that the defendant be brought to trial within the ten-day recapture period." *Id.* at 820 (citing Fla. R. Crim. P. 3.191(p)(3)).

The state postconviction court rejected Mr. Carter's ineffective-assistance claim, finding that counsel "had no legal basis to move for discharge on speedy trial grounds." (Doc. 28-3, Ex. 18, at 255). The court recounted that Mr. Carter "was arrested on January 29, 2014, and charged by Felony Information on February 18, 2014." (*Id.*) On May 22, 2014—before the expiration of the 175-day period—Mr. Carter's counsel "waived speedy trial." (*Id.*; *see also* Doc. 28-2, Ex. 1, at 13). Then, on July 2, 2014, counsel "filed a motion

14

to suppress" Mr. Carter's confession, "which was heard on August 12, 2014." (Doc. 28-3, Ex. 18, at 255). The trial court granted the motion, ruling that law enforcement violated Mr. Carter's rights by continuing the interrogation despite his request for an attorney. (Doc. 28-2, Ex. 2, at 87). As it was entitled to do under Florida law, *see* Fla. R. Crim. P. 9.140(c)(1)(B), the prosecution pursued an interlocutory appeal of the suppression order, (Doc. 28-2, Ex. 2, at 58). On August 25, 2014, the trial court stayed Mr. Carter's case and ordered that he "be brought to trial within 90 days of the date of receipt" of the appellate mandate. (Doc. 28-2, Ex. 2, at 67). The state appellate court "affirmed the trial court's order on March 11, 2016," "the mandate issued March 29, 2016," and the trial court received the mandate two days later. (Doc. 28-3, Ex. 18, at 255; *see also* Doc. 28-2, Ex. 2, at 91). Trial began on July 5, 2016—96 days after receipt of the mandate. (Doc. 28-2, Ex. 2, at 98).

Based on this procedural history, the state postconviction court found that the "record refute[d] a speedy trial violation." (Doc. 28-3, Ex. 18, at 255). As the court noted, Mr. Carter's counsel waived speedy trial on May 22, 2014, well before the 175-day period expired. That waiver was binding on Mr. Carter. *See Dillard*, 440 F. App'x at 820 ("[A] waiver of speedy trial by counsel is binding on the defendant, even though done without consulting him and even against the client's wishes."). The prosecution subsequently pursued an interlocutory appeal of the order suppressing Mr. Carter's confession. The trial court stayed the case, extended the speedy trial period, and ordered that Mr. Carter "be brought to trial within 90 days of the date of receipt" of the appellate mandate. (Doc. 28-2, Ex. 2, at 67; *see also* Fla. R. Crim. P. 3.191(i)(4) (permitting trial court to extend speedy trial period by "written or recorded order for a period of reasonable and necessary delay

15

resulting from," among other proceedings, "appeals by the state")). Following the State's unsuccessful appeal, Mr. Carter was brought to trial within the 10-day "recapture period provided for in Florida Rule of Criminal Procedure 3.191(p)(3)." (Doc. 28-3, Ex. 18, at 255). Thus, as the state postconviction court explained, counsel "had no legal basis to move for discharge on speedy trial grounds with regard to the proceedings following the trial court's order granting [Mr. Carter's] motion to suppress." (*Id.*)

The rejection of this claim was reasonable. "[A]lthough the issue of ineffective assistance . . . is one of constitutional dimension," a court "must defer to the state's construction of its own law when the validity of the [ineffective-assistance] claim . . . turns on state law." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017). Here, the state court found that any speedy trial challenge would have been meritless under Florida law. (Doc. 28-3, Ex. 18, at 255). Thus, the state court "already has told us how the issues would have been resolved under Florida state law had [counsel] done what [Mr. Carter] argues [s]he should have done." *Herring v. Sec'y. Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005). This Court is bound to defer to that determination. *See Stevens v. McNeil*, No. 5:07-cv-199-RS-GRJ, 2010 WL 4595815, at *5-6 (N.D. Fla. Sept. 20, 2010) ("[T]he state court's determination that Petitioner's rights under the state speedy trial rule were not violated must be accorded deference."), *adopted by* 2010 WL 4595807 (N.D. Fla. Nov. 5, 2010).

Deference aside, Mr. Carter fails to show that the state postconviction court unreasonably applied Florida or federal law in rejecting his *Strickland* claim. *See Anderson v. Sec'y, Dep't of Corr.*, No. 8:09-cv-2083-EAK-EAJ, 2010 WL 4259448, at *15 (M.D.

16

Fla. Oct. 25, 2010) ("Pursuant to the recapture feature of Florida's speedy trial rule, [Petitioner] could have been tried within the window period under state law. He does not demonstrate otherwise. Accordingly, it is objectively reasonable to conclude there was no reasonable probability of [Petitioner's] discharge under the state's speedy trial provisions had his counsel performed as now proposed."). Thus, the state postconviction court reasonably concluded that counsel was not deficient for failing to seek a speedy trial discharge under Florida law.

Mr. Carter's petition could be liberally construed to raise a separate, but related, claim—namely, that counsel was ineffective for failing to argue that Mr. Carter's right to a speedy trial under the Sixth Amendment was violated. (Doc. 18 at 6). Even on *de novo* review, any such claim would be meritless. "To determine whether the government has violated the right to a speedy trial under the Sixth Amendment, a [trial] court considers four factors: (1) 'length of delay'; (2) 'the reason for the delay'; (3) 'the defendant's assertion of his right'; and (4) 'prejudice to the defendant.'" *United States v. Knight*, 562 F.3d 1314, 1323 (11th Cir. 2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). While each factor is relevant, "[t]he flag all litigants seek to capture is the second factor, the reason for delay." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986).

Here, Mr. Carter was arrested in January 2014 and tried in July 2016. The approximately 30-month delay in this case "clearly satisfies the threshold inquiry of presumptive prejudice." *United States v. Villarreal*, 613 F.3d 1344, 1350-51 (11th Cir. 2010); *see also United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006) ("Delays exceeding one year are generally found to be presumptively prejudicial."). Thus, the first

17

factor weighs against the prosecution. But the remaining factors weigh against Mr. Carter. The bulk of the delay was caused by litigation over Mr. Carter's motion to suppress, including the State's unsuccessful appeal of the order granting the motion. Mr. Carter moved to suppress his confession in July 2014, the trial court granted the motion in August 2014, and the appellate mandate issued in March 2016. "An interlocutory appeal by the government is generally a valid reason that justifies an appropriate delay." *United States v. Herman,* 576 F.2d 1139, 1146 (5th Cir. 1978). That is especially the case where, as here, there is no indication that "the government act[ed] arbitrarily, negligently, or in bad faith" when it pursued the appeal. *Id.* Accordingly, the second factor weighs against Mr. Carter. *See Loud Hawk*, 474 U.S. at 315 ("Given the important public interests in appellate review . . . it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay.").

The third and fourth factors also weigh against Mr. Carter. As noted above, counsel waived speedy trial, and there is no indication that Mr. Carter ever asserted his speedy trial rights before the trial court. *See Barker*, 407 U.S. at 532 ("[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."). Finally, because the first three factors do not "uniformly weigh heavily against the government," Mr. Carter must show "actual prejudice" from the delay. *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). He does not even attempt to make such a showing, and there is no evidence suggesting that he was prejudiced by the delay. Accordingly, because any speedy trial claim under the federal constitution would have lacked merit, counsel was not

deficient for failing to pursue it. *See Freeman*, 536 F.3d at 1233 ("A lawyer cannot be deficient for failing to raise a meritless claim.").

Ground One, Sub-Claim B is denied.

## C.     Ground One, Sub-Claim C—Failure to Argue Double Jeopardy

Mr. Carter contends that trial counsel was ineffective for failing "to preserve the issue of double jeopardy." (Doc. 18 at 6). In his Rule 3.850 motion, Mr. Carter argued that his right against double jeopardy was violated because he was charged with two counts of robbery with a firearm based on a single incident. (Doc. 28-3, Ex. 18, at 239). He also cited a portion of the trial transcript in which, according to him, "the judge asked is there anything different in the two robber[ies], and defense counsel stated 'No.' But did not preserve the issue." (*Id.*)

The state postconviction court rejected this claim on the ground that "there was no double jeopardy issue to which counsel could have objected." (*Id.* at 267). The court noted that the superseding information "charged [Mr. Carter] with two counts of robbery for two separate victims." (*Id.*) The court also explained that "[t]he portion of the trial transcript to which [Mr. Carter] refer[red] took place during the charging conference, when the trial judge inquired whether the parties wanted the judge to read the elements of robbery once or twice in light of the two counts of robbery." (*Id.*) "After it was determined the property listed in each count was different, the [trial] court stated it would read separately the elements for each count." (*Id.* at 268). At that point, the trial court asked "whether there was anything different in the robbery 'instructions after the elements,' which [was] the transcript portion [Mr. Carter] attempt[ed] to cite to in his amended motion." (*Id.*) The state

postconviction court noted that Mr. Carter failed to "quote the entire exchange," which read as follows:

> THE COURT: Is there anything different in the two robbery—
>
> DEFENSE COUNSEL: No.
>
> THE COURT: —instructions after the elements?
>
> THE STATE: Not that—I don't see any, no.

(*Id.*; *see also* Doc. 28-2, Ex. 3, at 154). The state postconviction court found that "this exchange d[id] not refer to any issue involving double jeopardy and d[id] not in any way implicate a double jeopardy violation." (Doc. 28-3, Ex. 18, at 268). Accordingly, the court held that the "record refute[d] [Mr. Carter's] allegations that counsel was deficient for failing to preserve a double jeopardy violation." (*Id.*)

The rejection of this claim was reasonable. The Double Jeopardy Clause "guarantees against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *United States v. Bobb*, 577 F.3d 1366, 1371 (11th Cir. 2009). Mr. Carter appears to contend that he was punished twice for the same offense because he was convicted of two counts of robbery based on a single incident. But "two robberies of different people at the same time are two separate offenses calling for two judgments and two sentences." *Hillman v. State*, 410 So. 2d 180, 181 (Fla. 2d DCA 1982). During the incident in question, Mr. Carter robbed two people—Mr. McCullough and Ms. Satterly. And he stole property belonging to each of them—guns, a cellphone, and a handheld PlayStation from Mr. McCullough; car keys and a cellphone from Ms. Satterly. Thus, two robberies were

20

committed, and Mr. Carter's convictions did not violate double jeopardy.[2] *See Decastro v. State*, 708 So. 2d 635, 635 (Fla. 5th DCA 1998) (holding that "[t]wo robberies were committed" where defendant "held a handgun on each of the victims and took beer, which one victim had placed on the counter, and money from the other victim which had been revealed by the victim opening the cash register").

For these reasons, trial counsel was not deficient for failing to raise Mr. Carter's meritless double jeopardy argument. *See Denson*, 804 F.3d at 1342 ("Failing to make a meritless objection does not constitute deficient performance."). Indeed, Mr. Carter's appellate counsel raised the same issue on direct appeal, and the state appellate court affirmed the convictions without a written opinion. (Doc. 28-2, Exs. 5, 7). Ground One, Sub-Claim C is denied.

### D.    Ground One, Sub-Claim D—Miscellaneous Arguments

In the remainder of Ground One, Mr. Carter advances several additional arguments about his criminal case. None have merit. First, Mr. Carter alleges that, three months after the incident, one of the victims—Mr. McCullough—was charged with "a felony for carrying [a] concealed firearm." (Doc. 18 at 7). From this, Mr. Carter apparently infers that Mr. McCullough "didn't own any firearms" at the time of the robbery. (*Id.*) The inference is faulty. At the time of Mr. Carter's offense, Florida law granted "the statutory right to own, possess, and lawfully use weapons, including firearms, at a person's home or place

---

[2] In addition, the state postconviction court correctly found that the portion of the trial transcript cited by Mr. Carter did not support his claim of a double jeopardy violation.

of business without the restrictions against the open carrying of weapons or firearms . . . or the requirements of a concealed carry license." *Burns v. State*, 361 So. 3d 372, 377 (Fla. 4th DCA 2023). Thus, even if Mr. McCullough lacked a concealed carry permit at the time of the robbery, it does not follow that he did not lawfully own the firearms he kept in his house.

Second, Mr. Carter contends that the "testimony of newly discovered witnesses Matthew McCullough, [Deputy] Robert T. Wilfong," Deputy John K. King, and "Joel Elsea would have been helpful in exposing the fraud and/or falsifying document in the [criminal report affidavit] and the defective charging document." (Doc. 18 at 7). These vague and unsupported allegations are insufficient to warrant habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (explaining that a petitioner is not entitled to federal habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible"). Mr. Carter offers no specifics about what these witnesses would have said had they been called to testify. Nor does he explain how their testimony would have revealed any "fraud" or falsification of documents.

Third, Mr. Carter claims that statements by Matthew McCullough—one of Mr. McCullough's brothers—were "withheld" at trial. (Doc. 18 at 7). Matthew McCullough was asleep during the robbery, but he woke up right after Mr. Carter left, called 911, and handed the phone to Ms. Satterly. (Doc. 28-2, Ex. 3, at 50, 79, 97-98, 128). After the 911 call was played at trial, the prosecutor noted that he had "forgot[ten] to mention there was some redaction from the beginning of the" call. (*Id.* at 106). The prosecutor explained that

the operator "seem[ed] to know" Mr. Carter's name during the portion of the call that was played to the jury. (*Id.*) Mr. Carter's counsel said that she had "listened to the whole call" and did not believe it necessary to give the jury an instruction about the redaction. (*Id.*) The trial court agreed and did not provide an instruction. (*Id.*) The record does not contain the full transcript of the 911 call. (Doc. 28-2; Doc. 28-3).

In his petition, Mr. Carter complains that Matthew McCullough's statements at the beginning of the 911 call were redacted from the recording played to the jury. (Doc. 18 at 7). But he offers no information about what Matthew McCullough said during the call, and he fails to explain how those statements would have assisted his defense. Thus, Mr. Carter's "[s]peculation" about the impact of the redaction "is insufficient to carry [his] burden [as] a habeas corpus petitioner." *Brownlee v. Haley*, 306 F.3d 1043, 1060 (11th Cir. 2002). And to the extent the petition could be liberally construed as faulting Mr. Carter's counsel for neglecting to challenge the redaction, Mr. Carter fails to establish either deficient performance or prejudice.

Fourth, Mr. Carter appears to complain that Deputy Wilfong signed the criminal report affidavit but "was not present for trial." (Doc. 18 at 7). Mr. Carter does not cite—and this Court cannot locate—any authority requiring a law enforcement officer to appear or testify at trial simply because he was involved in an investigation. Regardless, the affidavit in question merely recounted statements made by Mr. McCullough and Ms. Satterly—both of whom testified at trial. (Doc. 28-2, Ex. 2, at 20; *id.*, Ex. 3, at 23-111).

Fifth and finally, Mr. Carter repeats his assertion that "ASA Joel Elsea violated [the Fifth and Fourteenth Amendments] when [he] failed to obtain sworn testimony from a

23

material witness before filing criminal charges." (Doc. 18 at 7-8). As explained above in connection with Ground One, Sub-Claim A, these assertions are insufficient to entitle Mr. Carter to federal habeas relief.

Ground One, Sub-Claim D is denied.

**E.     Ground Two—Alleged Fourth Amendment Violation**

Mr. Carter argues that Deputy Wilfong violated his Fourth Amendment rights by "making a sworn statement under oath based upon (hearsay)" to Deputy King, who subsequently used the statement to obtain "probable cause" to arrest him. (Doc. 18 at 10). As noted above, Deputy Wilfong prepared the narrative portion of the criminal report affidavit. (Doc. 28-2, Ex. 2, at 20). Based on interviews with the two victims, (Doc. 28-3, Ex. 18, at 55), Deputy Wilfong reported that Mr. Carter entered the house, pointed a gun at the victims, and "demanded the victim[s'] two phones[,] car keys, and four firearms," (Doc. 28-2, Ex. 2, at 20). Deputy Wilfong noted that Mr. Carter subsequently "fled the residence" with the items and drove off in Ms. Satterly's car. (Doc. 28-2, Ex. 2, at 20). He also stated that "[b]oth victims kn[e]w [Mr. Carter] personally and identified him via mugshot . . . as the person who committed the offense." (*Id.*)

Mr. Carter appears to contend that the affidavit violated the Fourth Amendment because Deputy Wilfong based the narrative portion on "hearsay" statements from the victims. (Doc. 18 at 10). This argument is meritless.[3] "It is well established that police

---

[3] Because this claim fails on the merits, the Court need not address Respondent's argument that it is procedurally defaulted.

officers may generally rely on eyewitness accounts and victim statements to establish probable cause." *Bright v. Thomas*, 754 F. App'x 783, 787 (11th Cir. 2018) (collecting cases); *see also Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557 (11th Cir. 2008) ("Probable cause for an arrest exists when an eyewitness reports witnessing a crime to police."). Here, the two victims provided Deputy Wilfong with "eyewitness accounts" of Mr. Carter's crimes. *Bright*, 754 F. App'x at 787. Those statements were plainly sufficient to "cause a person of reasonable caution to believe that [multiple] criminal offense[s] ha[d] been . . . committed" by Mr. Carter. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Moreover, "[t]o the extent [Mr. Carter] claims that his arrest could not be properly based upon statements of other persons, his claim is without merit." *Thomas v. Tucker*, No. 5:11-cv-332-MMP-EMT, 2012 WL 4742804, at *8 (N.D. Fla. Aug. 10, 2012), *adopted by* 2012 WL 4760870 (N.D. Fla. Oct. 3, 2012); *see also Favre v. Henderson*, 464 F.2d 359, 367 n.16 (5th Cir. 1972) ("Hearsay may, and frequently does, establish probable cause.").

Accordingly, because Mr. Carter fails to establish a Fourth Amendment violation, Ground Two is denied.

## F.    Ground Four—Alleged Confrontation Clause Violations[4]

Mr. Carter contends that the Sixth Amendment's Confrontation Clause was violated when he "was not permitted to cross-examine" several witnesses "regarding possible prejudice and bias that may have caused faulty identification of the defendant." (Doc. 18

---

[4] The Court previously dismissed Ground Three "without prejudice to asserting the claim in a separate civil rights violation action." (Doc. 19 at 1).

at 15). The witnesses he was allegedly not permitted to cross-examine were Deputy
Wilfong, Michael McCullough, Teagan Myers, Deputy Bjar A. Atkins, Jacob D. Becker,
Detective Patrick S. Cole, Deputy Christopher M. Hinkle, Detective Kari L. Mathewson,
Irma R. O'Connor, Deputy Craig A. Roberts, and Detective Chuck B. Sackman. (*Id.* at 15-
16).

This claim is meritless. None of the persons listed in Ground Four testified at trial.
Nor were any of their statements introduced. (Doc. 28-2, Ex. 3). Thus, Mr. Carter appears
to contend that the Confrontation Clause was violated because he was not given an
opportunity to elicit favorable testimony from several uncalled witnesses. But the
prosecution "was under no obligation to call" at trial the persons listed in Ground Four.
*McAllister v. Brown*, 555 F.2d 1277, 1278 (5th Cir. 1977); *see also Cooper v. California*,
386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention here that he was
unconstitutionally deprived of the right to confront the witnesses against him, because the
State did not produce the informant to testify against him. This contention we consider
absolutely devoid of merit."). And "[t]he confrontation clause does not come into play
where a potential witness neither testifies nor provides evidence at trial." *United States v.
Porter*, 764 F.2d 1, 9 (1st Cir. 1985). Because the persons listed in Ground Four were not
witnesses at trial and no statements by them were introduced, Mr. Carter's inability to
question them did not violate the Confrontation Clause. *See United States v. Azmat*, No.
CR413-28, 2014 WL 29461, at *1 (S.D. Ga. Jan. 3, 2014) ("If the Government does not
call these persons as witnesses or introduce testimonial statements from any of them at

trial, the Court cannot discern how or why any defendant's Sixth Amendment right of confrontation could be violated."). Ground Four is denied.

### G.     Ground Five—Alleged Speedy Trial Violation

Mr. Carter contends that his right to a speedy trial "was violated when trial counsel failed to move for discharge and to investigate speedy trial violation." (Doc. 18 at 22). As discussed above in connection with Ground One, Sub-Claim B, there is no basis to conclude that the trial court violated Mr. Carter's right to a speedy trial under state or federal law. Accordingly, even under *de novo* review, Mr. Carter's speedy trial claim lacks merit.[5]

In support of his claim, Mr. Carter cites a portion of the trial transcript in which counsel and the court discussed "another pending case, the felon in possession of the firearm charge." (Doc. 28-2, Ex. 3, at 208). The following exchange took place:

THE COURT: When is the—the second matter, when does speedy run on that case?

[THE STATE]: Well, that's a tough—

[DEFENSE COUNSEL]: Tough question.

[THE STATE]: That's a tough question since there was an appeal involved in these cases, Judge.

THE COURT: Okay. So you can't give me an exact time?

[THE STATE]: No.

THE COURT: So after—

---

[5] Because this claim fails on the merits, the Court need not address Respondent's argument that it is procedurally defaulted.

27

> [THE STATE]: I don't believe it was ever waived. Judge, I think we'll be able to resolve or figure out what to do with this case without going to trial in the felon in possession after this case is—to be sentenced on this robbery case.

(*Id.*) The prosecution subsequently "announce[d] a *nolle pros*" in the felon-in-possession case. (*Id.* at 224).

This exchange does not support Mr. Carter's speedy trial claim. The discussion concerned a separate criminal case in which Mr. Carter had been charged with being a felon in possession of a firearm. That charge was ultimately *nolle prossed*. "A federal habeas petitioner must be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Diaz v. State of Fla. Fourth Jud. Cir. ex rel. Duval Cnty.*, 683 F.3d 1261, 1264 (11th Cir. 2012). Because the felon-in-possession charge was *nolle prossed*, Mr. Carter was never "in custody" pursuant to a judgment in that case. Accordingly, this Court lacks jurisdiction over any speedy trial challenge to the felon-in-possession charge. *See Brewer v. Escambia Cnty. Sheriff's Dep't*, No. 3:15-cv-550-LC-GRJ, 2016 WL 1084720, at *1 (N.D. Fla. Feb. 18, 2016) ("[T]he charge against Petitioner for the offense identified in her Petition was '*nolle prosequi*.' The entry of *nolle prosequi* is not a judgment by a state court. . . . Petitioner, therefore, is neither in custody, nor was there a 'judgment' by a state court entitling Petitioner to pursue relief under § 2254."), *adopted by* 2016 WL 1090571 (N.D. Fla. Mar. 18, 2016).

Ground Five is denied.

### H.    Ground Six—Alleged Due Process Violations

In Ground Six, Mr. Carter repeats arguments raised elsewhere in his petition. He again complains that Deputy Wilfong relied on "hearsay" statements from the victims in preparing the criminal report affidavit. (Doc. 18 at 23). And he restates his objections to the alleged defects in the superseding information. (*Id.* at 23-24). According to Mr. Carter, these alleged errors violated double jeopardy and deprived him of his right to due process under the federal constitution. (*Id.*) For the reasons explained above in connection with Ground One, Sub-Claim A and Ground Two, none of Mr. Carter's allegations about the affidavit or the information support federal habeas relief. Accordingly, Ground Six is denied.[6]

### I.    Ground Seven, Sub-Claim A—Alleged Violation of Right to Impartial Jury

Mr. Carter alleges that his right to an impartial jury was violated because (1) the prosecution "select[ed] at least one racially discriminating juror," whose bias was demonstrated by his "prior involvement with another robbery case"; (2) the "community where members of the jury work[ed] or live[d] was exposed to inflammatory media accounts of [the] case"; (3) "members of certain racial, religious, gender, or age-base[d] (the elderly) groups were excluded from the jury pool"; and (4) the prosecution "intentionally used . . . peremptory challenges . . . to remove members of a particular racial

---

[6] To the extent that Mr. Carter alleges counsel was ineffective for failing to call Deputy Wilfong at trial, he fails to allege any facts suggesting that counsel was deficient or that he was prejudiced.

group or gender from the jury." (*Id.* at 25). More generally, Mr. Carter claims that "there is suspicion concerning the jury selection process" in his case. (*Id.* at 26).

Respondent correctly contends that these claims are unexhausted and procedurally defaulted. (Doc. 27 at 62-63). To satisfy the exhaustion requirement, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," either on direct appeal or on collateral review. *Boerckel*, 526 U.S. at 845. Mr. Carter did not raise any arguments about the "jury selection process" on direct appeal. (Doc. 28-2, Ex. 5). Nor did he present the issue in any of his state postconviction filings. (*Id.*, Exs. 10, 11; Doc. 28-3, Ex. 18). Mr. Carter's failure to present these claims in state court renders them unexhausted.

Mr. Carter cannot return to state court to present his unexhausted claims in a second, untimely direct appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within thirty days of the rendition of a sentence). Nor can he raise them in another postconviction motion. *See* Fla. R. Crim. P. 3.850(b) (imposing two-year window of time to file motion for postconviction relief). As a result, Mr. Carter's challenges to the jury selection process are procedurally defaulted. *See Smith*, 256 F.3d at 1138 ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."). Because Mr. Carter has not shown that an exception applies to overcome the default, Ground Seven, Sub-Claim A is barred from federal habeas review.

### J.        Ground Seven, Sub-Claim B—Miscellaneous Arguments

Finally, Mr. Carter argues that (1) the redaction of the beginning of the 911 call violated his "right to a fair and impartial judge and jury," and (2) the trial court failed to "correctly define the element of take" in the jury instructions for robbery. (Doc. 18 at 26-27). Both arguments lack merit.[7]

First, Mr. Carter fails to show that the redaction violated his constitutional rights. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). "Indeed, in a habeas corpus action brought by a state prisoner, [the court's] authority is severely restricted in the review of state evidentiary rulings." *Id.* "Habeas relief is warranted only when the error so infused the trial with unfairness as to deny due process of law." *Id.*; *see also Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) ("We will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial."). "Fundamental fairness is violated when the evidence excluded is material in the sense of a crucial, critical, highly significant factor." *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986).

Mr. Carter fails to establish that any error occurred when the jury heard a redacted version of the 911 call. As noted above, Mr. Carter provides no information about what was said during the portion of the call that was not played to the jury. Nor does he contend that the redacted version "creat[ed] [a] misleading impression[]" of the call "by taking

---

[7] Because these claims fail on the merits, the Court need not address Respondent's argument that they are procedurally defaulted.

statements out of context," as would be required to show that the entire tape should have been played under "the rule of completeness." *Larzelere v. State*, 676 So. 2d 394, 401 (Fla. 1996). Furthermore, Mr. Carter fails to allege any facts suggesting that the redacted portion of the recording was "material in the sense of a crucial, critical, highly significant factor." *Demps*, 805 F.2d at 1430. In these circumstances, there is no basis to conclude that Mr. Carter's constitutional rights were violated because the jury heard a redacted version of the 911 call.

Mr. Carter also fails to show that he is entitled to relief based on the jury instructions. "A jury instruction that was allegedly incorrect under state law is not a basis for habeas relief, because federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005). "[F]ederal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, so infected the entire trial that the resulting conviction violate[d] due process." *Id.*

The jury in Mr. Carter's case received Florida's standard instruction on robbery. *Compare* Fla. Std. Jury Instr. (Crim.) 15.1, *with* Doc. 28-2, Ex. 2, at 104-05, 109-110. Mr. Carter fails to explain how the standard instruction was deficient, and he offers no basis to conclude that it misstated any aspect of Florida law. Accordingly, Mr. Carter cannot establish that "the challenged instruction, viewed in the context of both the entire charge and the trial record, so infected the entire trial that the resulting conviction violate[d] due process." *Jamerson*, 410 F.3d at 688; *see also Destine v. McDonough*, No. 06-61568-CIV,

2008 WL 4792364, at *8 (S.D. Fla. Oct. 31, 2008) (holding that petitioner "state[d] no basis for federal relief" "where the jury received the standard instruction on the voluntariness of a confession that was approved by the Florida Supreme Court"). Ground Seven, Sub-Claim B is denied.[8]

Accordingly, the Court **ORDERS**:

1. Mr. Carter's third amended petition (Doc. 18) is **DENIED**.

2. The **CLERK** is directed to enter judgment against Mr. Carter and to **CLOSE** this case.

3. Mr. Carter is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Carter must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Carter has not made the requisite showing. Because Mr. Carter is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on January 23, 2024.

---

[8] To the extent that Mr. Carter reiterates his assertion that he was denied the right to a speedy trial, that claim fails for the reasons explained above in connection with Ground One, Sub-Claim B.

33

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE